STATE of Missouri, Respondent,

v.

Brenda F. GARNER, Appellant.

No. KCD 28135.

Missouri Court of Appeals,
Kansas City District.

July 6, 1976.

Thomas M. Larson, Public Defender, Lee M. Nation, Asst. Public Defender, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Philip M. Koppe, Asst. Atty. Gen., Jefferson City, for respondent.

Before TURNAGE, P. J., and WELBORN and HIGGINS, Special Judges.

ROBERT R. WELBORN, Special Judge.

A jury in the Jackson County Circuit Court found Brenda F. Garner guilty of stealing property valued at over $50.00. §§ 560.156, 560.161 1. (2), RSMo 1969. Acting under the Second Offender Act, the trial court assessed punishment at four years' imprisonment. This appeal followed.

Inasmuch as appellant attacks the sufficiency of the state's evidence, a detailed statement of the evidence (taken largely from respondent's brief) is necessary. All evidence came from State's witnesses. Appellant presented no testimony.

Phillip Gicalone, a security officer at Stix, Baer and Fuller's Department Store on Ward Parkway in Kansas City, testified that at approximately 5:30 p. m. on October 17, 1974, he saw the appellant and another woman enter the store through the mall entrance, proceed to the escalator which was located near the center of the store, and ride to the second floor. Neither woman was carrying or wearing a coat or jacket when seen by Gicalone.

Approximately fifteen minutes later, at 5:45 p. m., the appellant and her companion were seen by Ann Smith, another security officer, boarding the escalator on the second floor of the store, and preparing to descend to the mall level. One of the women was carrying a gold leather coat over her arm; the coat was rolled inside out. The appellant and her companion rode the escalator down to the mall level, and walked west through the cosmetic department toward an exit.

Five or ten minutes later, Ms. Smith saw both women returning through the cosmetic department toward the escalator. Again, neither was wearing or carrying a coat. The appellant and her companion again rode the escalator to the second floor and headed toward the Junior Sportswear Department, where leather coats were on display.

Ms. Smith left to summon the store security manager, Daniel Anderson. She estimated that the appellant and her companion were out of her sight for approximately three or four minutes during this time. Shortly after she returned with Anderson, she saw the appellant and her companion leaving the Junior Sportswear Department, each carrying a green leather jacket over her arm; both jackets were folded inside out. Anderson and Ms. Smith followed the appellant and her companion down the escalator to the mall level. The two women stepped off the escalator, made a U-turn and headed for the mall exit. When they saw Anderson, the two women started to walk in different directions; however, both were stopped by Anderson before they could leave the store.

The appellant told Anderson that she had purchased the coat at Stix, Baer and Fuller's Independence store. She also pointed to some little blue "squiggles" on the collar of the jacket she was carrying, and stated that she had placed those marks there to identify her jacket. An examination of the remaining leather jackets in stock in the Junior Sportswear Department revealed that they had the same markings.

Anderson testified that, after being summoned from his office by Ms. Smith, he went upstairs and proceeded in the direction of the Junior Sportswear Department, where he saw the appellant and her companion standing with their backs to him, facing a circle rack of leather coats. The appellant was carrying a green leather jacket folded over her arm, inside out; the other woman was in the process of taking a coat off the hanger. The second woman (Ms. Tarry) placed the coat over her arm in the same manner as the appellant, and slipped the hanger under another coat.

The two women then proceeded toward the escalator, passing at least one cash register. Anderson followed them down the escalator, and when the woman noticed that he was following them, they began to walk more quickly. Anderson caught up with them as they started to split up, and informed them that he "wanted to talk to them about the possibility of wrongful taking of merchandise from Stix, Baer and Fuller." The appellant immediately volunteered that it "was kind of ridiculous to be arrested for stealing her own coat."

On cross-examination, Anderson stated that from the time he first saw the appellant and Ms. Tarry, they were not out of his sight for more than five or ten seconds. He also testified that when the coats were taken from the two women, the sale tags were missing.

Debbie Dillon, manager of the Junior Sportswear Department, testified that she saw the appellant and her companion standing by the coat rack with leather coats folded over their arms. After the two women left her department, she went to the coat section and counted to see if any coats were missing. Her investigation revealed four empty hangers; however, no leather coats had been sold that day. Ms. Dillon also noted that the plastic fasteners, which kept the coat hangers attached to the rod, were not severed, as they would have been if the coats had been sold by one of the sales clerks. Ms. Dillon testified that the coat in the possession of the appellant had a wholesale value of $59.75 and a retail value of $120.00.

On cross-examination, Ms. Dillon stated that State's Exhibit 2, the coat found in the possession of the appellant, came from the Stix, Baer and Fuller store in Ward Parkway. She stated that she could prove that it was in her stock because "I counted the coats, I know that it is my coat." She added: "And I know it was in my stock." Ms. Dillon also stated, however, that there was no way she could prove she had that particular coat.

Nancy Breidenback, merchandise coordinator at the Stix, Baer and Fuller store in Independence, testified that the particular kind of coat found in the possession of the appellant had never been carried by the Independence store.

Carl Jackman, a Kansas City, Missouri police officer, was called to the scene, and took possession of the two coats. He testified that the appellant stated that she had purchased the coat from the Stix, Baer and Fuller's Independence store. Another Kansas City police officer, Cecil Stockdale, Jr., questioned the appellant at the scene after advising her of her constitutional rights. The appellant told Officer Stockdale "that she had gone to Stix, Baer and Fuller with the intention of stealing something, but [that] she was arrested before she had a chance to do so." Again she stated that the jacket in her possession had come from the Stix, Baer and Fuller store in Independence.

Although the information charged appellant with stealing two coats, either acting alone or in concert with another, the case was submitted to the jury on a charge of stealing one coat by appellant. After ten minutes' deliberation, the jury returned a verdict of guilty.

█ Appellant first contends that her motion for judgment of acquittal should have been granted because the state adduced insufficient evidence upon which to predicate a finding of guilt. Appellant contends that the state failed to prove the corpus delicti and further that even if it did so, it failed to prove that the loss was due to appellant's criminal activity.

On the first aspect, appellant challenges the adequacy of Ms. Dillon's testimony to show that the loss of the four coats she testified were missing was due to criminality. Appellant questions the frequency of the inventory check, relied upon by Ms. Dillon, as evidence that four coats were missing. The witness stated that she made a count every day. She questions the accuracy of the inventories. No questions along that line were propounded to the witness. However, her testimony would support the

conclusion that her method of operation and checking had been sufficient to permit her to keep track of the stock of merchandise. Appellant suggests that the missing coats could have been taken to another rack by sales personnel. However, this possibility was negatived by the witness's testimony that had sales personnel removed the coats, they would also have removed the hangers.

Appellant's argument ignores entirely the evidence that appellant's companion was seen removing a coat from the rack. It ignores the evidence that, having entered the store without a coat, appellant was standing at the rack with a coat of the style and manufacture of the coats displayed on the rack. Appellant emphasizes Ms. Dillon's statement that there was no way by which she could "prove" that the particular coat in appellant's possession had been in her stock. Again, however, this contention ignores the witness's statement: "I know it was in my stock." The witness's statement that she couldn't "prove" it was was based upon the absence of the store's tag from the coat. Such acknowledgment, however, would not preclude the jury's finding, beyond a reasonable doubt, on the basis of all of the evidence, that the coat had been taken from the sales rack.

Appellant would liken her case to that of *State v. Celmars*, 399 S.W.2d 145 (Mo.App. 1966), in which the court held that the corpus delicti had not been shown in a "shoplifting" case. In that case, the articles involved were cigarettes. The defendant was found with sixteen cartons of cigarettes on a parking lot, across the street from a store where he had been seen, behaving somewhat suspiciously, some 12 minutes earlier. Several cartons of cigarettes were in a bag bearing the name of the store. However, although the cigarettes were identified as having come from the store, store employees testified that they could not tell whether or not they had been stolen or purchased. The store manager stated that he did not know of any merchandise having been stolen from the store on the day of the incident.

The court concluded that there was no evidence, direct or circumstantial, to show that the cigarettes had been stolen. There was such evidence in this case. The state's evidence showed that four coats were missing from the rack and that none had been sold. Appellant was seen standing at the rack holding a coat of the type displayed for sale. This case is clearly distinguishable from Celmars.

Appellant further contends that even if the corpus delicti was proved, there was insufficient evidence to prove that the loss was due to appellant's criminal activity. This argument is without merit. No one did testify that they saw appellant take the coat off the rack. However, appellant was seen in the immediate vicinity of the rack from which the coats were missing. Appellant argues that Mr. Anderson testified that she was out of his sight for only five to ten seconds and that this was too short a time to have permitted removal of the coat from the rack and also removal and disposition of the sales tags. This argument misreads Anderson's testimony that appellant was holding the coat when he first saw her.

Appellant's argument ignores the appellant's statement to Anderson, a statement which recognized, without statement from Anderson, that she was aware that her possession of the coat was the matter Anderson wanted to discuss with her. It also ignores the state's evidence which showed that appellant's statement that she had bought the coat at Stix's Independence store was untrue.

The circumstances of the case were such that a jury could conclude beyond a reasonable doubt that appellant had taken the coat. The fact that she passed the check station where she might have evidenced an intention to purchase the coat could be considered along with the statement of appellant in concluding that she took the coat with intent to steal it.

■ The state's evidence was not required to negative every possible theory of innocence, only reasonable hypothesis of innocence. *State v. Brunson*, 516 S.W.2d 799,

803[6, 7] (Mo.App.1974). The state's evidence here met the requirement.

Appellant challenges the adequacy of the charge under the Second Offender Act and the sufficiency of the evidence in support thereof.

■ The information charged that "Brenda F. Garner, a/k/a Brenda A. Haywood * * *, on the 5th day of December, 1969, at the District of Johnson, State of Kansas, was convicted of forging a credit agreement; that thereafter on the 5th day of February, 1969 said defendant was sentenced to not less than one nor more than seven years at hard labor or until legally discharged, at the Kansas State Industrial Farm for women at Lansing, Kansas; that thereafter on the 19th day of February, 1969 said defendant was placed on parole for a period of five years, * * *."

Appellant contends that the information fails to charge a prior conviction and subsequent sentence as required by § 556.280, RSMo 1969, because it charges a conviction on December 5, 1969, and a sentence on February 5, 1969, a date prior to, not subsequent to, the date of the alleged conviction.

Section 556.280 does require a conviction for an offense and that the defendant "shall be sentenced and subsequently placed on probation, paroled, fined or imprisoned therefor, * * *." She contends that the information here does not charge a *subsequent* sentence and probation, but charges a sentence and probation ten months prior to the alleged conviction.

Although Section 556.280 is "highly penal and * * * must be strictly construed" (*State v. Hacker*, 291 S.W.2d 155, 157 (Mo. 1956)), there is no requirement that such charge in an information be treated differently from other matters required to be stated in charging an offense. "Where it is sought to charge accused as an habitual criminal, the indictment or information should contain whatever allegations may be essential under the particular statute controlling, and its sufficiency will be determined in the light of the general rules of criminal pleading." 42 C.J.S. Indictments and Informations § 145(2), p. 1065 (1944).

See *State v. Ellifrits,* 459 S.W.2d 293 (Mo. banc 1970).

This rule would allow application of the Statute of Jeofails (§ 545.030, RSMo 1969), now incorporated in Rule 24.11 to the Second Offender portion of indictments and informations. Among the provisions of that statute are the following:

"1. No indictment or information shall be deemed invalid, nor shall the trial, judgment or other proceedings thereon be stayed, arrested or in any manner affected:

\* \* \* \* \* \*

"(5) For omitting to state the time at which the offense was committed, in any case where time is not of the essence of the offense; nor

"(6) For stating the time imperfectly; nor

"(7) For stating the offense to have been committed on a day subsequent to the finding of the indictment or information, or an impossible day, or on a day that never happened . . .

\* \* \* \* \* \*

"(18) For any other defect or imperfection which does not tend to the prejudice of the substantial rights of the defendant upon the merits."

Applying these provisions, in *State v. Smith,* 237 S.W. 482, 484[1] (Mo.1922), the court refused to invalidate an information charging an offense to have occurred six months after the filing of the information. In *State v. Feitz,* 154 Mo.App. 578, 136 S.W. 746 (1911), an indictment charging an offense to have occurred prior to the effective date of the law involved, as stated in the charge, was upheld. In both cases, the obvious clerical error in the dates of the offense charged was held to have been cured. Here, the date of conviction of the Kansas offense was obviously a clerical error, inasmuch as the conviction must precede the sentencing and probation. Such error did not invalidate the Second Offender charge.

This claim of error is without merit.

The sufficiency of the evidence to support the Second Offender charge is also challenged. In support of the charge, the state produced a certified copy of a journal entry of the Johnson County Kansas District Court, which recited among other things the following:

"Now on this 5th day of February, 1969, this matter comes on for arraignment. \* \* \*

"The Information is read and defendant enters a plea of guilty to Count I. Thereupon, the State dismisses Counts II and III of the Information as read. \* \* \*

"Thereupon, the Court accepts defendant's plea of guilty and no legal cause shown and none appearing or found by the Court, pronounces the following sentence:

"IT IS THE JUDGMENT, SENTENCE AND ORDER OF THE COURT that the defendant, Brenda Ann Haywood, be and she is hereby sentenced to a term of not less than one nor more than seven years at hard labor or until legally discharged, at the Kansas State Industrial Farm for Women at Lansing, Kansas, for forging a credit agreement in violation of K.S.A. 21–616 sentencing provision being set forth in K.S.A. 21–631.

"Upon defendant' oral motion, execution of sentence is stayed until 3:00 P.M. this date for application for probation.

\* \* \* \* \* \*

"Now on this 19th day of February, 1969, appearances being the same as above, this matter comes on for the decision of the Board of Paroles of the District Court of Johnson County, Kansas.

"IT IS THEREFORE BY THE BOARD OF PAROLES OF THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS ORDERED that defendant's application for parole be granted and defendant be paroled for a period of five years, subject to the conditions of subsequent Order of Probation."

Detective Stockdale of the Kansas City Police Department testified: "Brenda Haywood was a defendant whom I testified against yesterday, she's also known as Brenda Garner. \* \* \* I know Brenda

Garner and Brenda Haywood as being the same person." In response to a question from defense counsel, the officer stated that he could not swear that Brenda Garner is the person referred to in the Johnson County Court record. He said, "I cannot say that by reason of that document, no."

The state invokes the rule that identity of names of a person charged and of a person for whom a record of prior conviction has been produced is sufficient to make a prima facie case for identification of the defendant as the subject of the prior conviction. *State v. Cook*, 463 S.W.2d 863, 868[6–8] (Mo.1971); *State v. Harris*, 452 S.W.2d 577, 578[2] (Mo.1970); *State v. Williams*, 376 S.W.2d 133, 135[4, 5] (Mo.1964).

This is, however, not the usual case for application of this rule. Here the conviction was not of a person of the same name as the defendant in the original charge. The conviction was in the name of an alias, stated in the amended Second Offender charge. To bridge that gap the state offered only the testimony of the Kansas City police officer that Garner was known to him as Haywood. He acknowledged, however, that he did not know that the Brenda Garner on trial had been convicted of forging a credit agreement in Kansas on February 5, 1969, as Brenda Haywood. Nor did the officer testify that he knew Garner as Haywood at or around the time of such conviction. The record is bare as to the time and basis of such knowledge.

Whenever the state seeks to invoke the Second Offender law, it assumes the burden of proving beyond a reasonable doubt the facts required by that law. *State v. Martin*, 336 S.W.2d 394, 397[5] (Mo.1960). Thus, here the state had such burden in proving that Brenda Garner was the same person as Brenda Haywood. The state's evidence showed only that Garner was at sometime or another known to the officer as Haywood, but it failed to show that Garner had been convicted as Haywood. This court will not extend the identity of names rule to apply in this case. Some further identification of the defendant as the person convicted under an alias is necessary. See *State v. Trevino*, 428 S.W.2d 552, 554[2, 3] (Mo.1968).

The contention that the proof varied from the charge is without merit. As previously pointed out, the date of conviction stated in the information is clearly a clerical error. The evidence of conviction and probation was adequate.

Counsel on appeal has conjured up numerous problems which the error might have caused in attempting to prepare a defense against the Second Offender charge. The possibilities are premised upon the theory that in preparing a defense, only the date of the alleged conviction would have been considered. In view of the other matters accurately stated in the charge, it could hardly be presumed that counsel would limit inquiry to the only erroneous date. Certainly, in this case, trial counsel, different from counsel on appeal, never suggested that he had been misled or prejudiced by the erroneous recital.

Because of the insufficiency of the evidence to prove beyond a reasonable doubt that defendant was convicted of an offense which subjects her to the Second Offender Law, " * * * the sentence herein is declared void, the judgment is reversed and the cause remanded with directions to the court to cause the defendant to be brought before it to hold a hearing on the issue of former conviction of defendant and if proved to pronounce sentence and judgment against defendant taking all proper procedural steps required therefor by law and the rules * * * but in the alternative if the issue of former conviction be found in favor of defendant to grant [her] a new trial on all issues." *State v. Hill*, 371 S.W.2d 278, 283 (Mo.1963).

Reversed and remanded.

All concur.