STATE of Missouri,
Plaintiff-Respondent,

v.

David FITZPATRICK,
Defendant-Appellant.

No. 65564.

Supreme Court of Missouri,
En Banc.

Sept. 11, 1984.

Rehearing Denied Oct. 9, 1984.

Henry Robertson, St. Louis, for defendant-appellant.

John Ashcroft, Atty. Gen., Frank Rubin, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

GUNN, Judge.

Defendant-appellant appeals his conviction for forcible rape, a violation of § 566.-030, RSMo Cum.Supp.1983.

The primary issue on appeal concerns double jeopardy. Defendant was convicted in the case involved in this appeal after his first trial on the same charge ended in a mistrial. The mistrial was granted on defense counsel's motion, but there is some dispute as to whether defendant agreed with his counsel's action.

Prior to the second trial, defendant moved to dismiss the information alleging that the second trial was barred by the Double Jeopardy Clause, U.S. Const. amend. V. The motion to dismiss was overruled. The second trial resulted in conviction, and defendant was sentenced to thirty years imprisonment as a persistent offender. Section 558.016, RSMo 1978.

· The Eastern District affirmed the conviction. Upon proper application, transfer to this Court was granted, and we consider the case as on original appeal. Rules 83.03 and 83.09.

We affirm the judgment of conviction.

Defendant does not challenge the sufficiency of the evidence to support his conviction. It is therefore unnecessary to review the circumstances of the rape itself. It is enough to note that there was substantial evidence that defendant had indeed raped the prosecutrix.

The appeal raises two points: 1) that the second trial violated the Double Jeopardy Clause, in that defendant did not consent to his attorney's request for a mistrial in the prior prosecution; and, 2) that there was insufficient evidence identifying him as a prior offender.

During the presentation of the state's case in the first trial, a stack of exhibits which had been identified and received into evidence was passed to the jury by the prosecutor. Among these accepted exhibits was a police laboratory report. However, inadvertently attached to the lab report was a police report which had not been admitted into evidence. The prosecutor discovered the error and immediately brought it to the trial court's attention. It is conceded that the passing of the police report to the jury was completely unintentional. Inquiry was then made of the jurors as to whether any had read the police report, and nine responded affirmatively.

The following colloquy ensued between the trial court and counsel at the bench:

THE COURT: Did you talk to your man by this time?

MR. STRAGAND [defense counsel]: Yes sir, I did. We are not going to be able to work it out.

THE COURT: It is a mutual thing, apparently?

MR. STRAGAND: Judge, are you going to declare a mistrial?

THE COURT: Well, you haven't moved. That is the reason I turned it over to you.

MR. STRAGAND: Well, Judge, I would say that, so we make it clear on the record, we have had some off-the-record

discussions, and what had happened earlier was that an exhibit had been passed to the jury, and attached to this was a police report. These were State's Exhibits that were passed by Mr. Hoag, and I do not say that Mr. Hoag passed these intentionally; however, they, through gross negligence, did end up in the jury's hands.

MR. HOAG [prosecuting attorney]: Gross negligence? I will make my record, Judge.

MR. STRAGAND: And through Mr. Hoag's gross negligence, at least nine members of the jury have seen, and most of them have read thoroughly the police report which was not admitted into evidence. In fact, it would be inadmissible hearsay. I believe that my client has a right to a trial with this particular jury because we have proceeded to trial. The State has placed all its evidence on, and my defendant has gone through the anxiety, embarrassment of a trial for two days now, and he would very much like to proceed to trial with this jury. However, based upon what has happened, and I will base my motion on *United States v. Kessler,* [530 F.2d 1246 (5th Cir.1976)] which is the Fifth Circuit United States Appellate Court decision 1976. On the basis of that case I will make a Motion for Mistrial.

After some further argument concerning the inadvertence of the prosecutor's error and the failure of defense counsel to discover the report, the trial judge inquired if defense counsel was "asking, on behalf of the defendant, for a mistrial," to which counsel responded, "Yes."

The trial court granted the mistrial and then made it clear that he did not think the prosecutor was guilty of any intentional misconduct, concluding: "The defendant has asked for the mistrial and the Court is granting the mistrial on his request."

It is in this factual context that defendant raises his double jeopardy challenge to his reprosecution following mistrial. However, it is also important to note that defendant's motion to dismiss prior to the second trial was based solely on the contention that retrial was barred as a result of "gross negligence" on the part of the prosecution. The same allegation was pressed in his motion for new trial following his conviction. For the first time on appeal, defendant argues that the mistrial was ordered by the trial court *sua sponte* and that the trial court was therefore required to make an explicit finding of "manifest necessity" for the mistrial in order for reprosecution to be permissible. This contention will therefore be considered as a matter of plain error, Rule 30.20.

In reviewing for plain error, the relevant question is whether the record demonstrates error "which so substantially affects the rights of the accused that a 'manifest injustice or miscarriage of justice inexorably results if left uncorrected.'" *State v. Valentine,* 646 S.W.2d 729, 731 (Mo. 1983), *quoting State v. Miller,* 604 S.W.2d 702, 706 (Mo.App.1980).

Since defendant's complaint is not addressed to the propriety of the mistrial itself, our attention focuses on the denial by the second trial court of defendant's motion to dismiss. It is this ruling which is to be judged under the plain error standard of review.

The Double Jeopardy Clause of the fifth amendment protects a criminal defendant from repeated prosecutions for the same offense. *Oregon v. Kennedy,* 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982). Concomitant with this protection is the defendant's "valued right to have his trial completed by a particular tribunal." *Id.* at 671–72, 102 S.Ct. at 2087, *quoting Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949). Thus, a defendant's right to be free from a subsequent prosecution for the same offense "attaches," or becomes effective, at the time the jury is empaneled and sworn. *Crist v. Bretz,* 437 U.S. 28, 35, 98 S.Ct. 2156, 2160, 57 L.Ed.2d 24 (1978). Following the attachment of jeopardy, if a mistrial is declared and the jury discharged, a defendant may be retried only in one of two distinct sets of circumstances.

■ The first is that the mistrial is declared by the trial court without the defendant's request or consent, but only after "a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings." *United States v. Dinitz*, 424 U.S. 600, 607, 96 S.Ct. 1075, 1079, 47 L.Ed.2d 267 (1976), *quoting United States v. Jorn*, 400 U.S. 470, 485, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1971). This rule expresses the "manifest necessity" doctrine first espoused in *United States v. Perez*, 9 Wheat. 579, 580, 6 L.Ed. 194 (1824). *Id.* The prototypical example of "manifest necessity" sufficient to remove the double jeopardy bar in a case of a court-declared mistrial is the jury's declaration that it is unable to reach a verdict. *Oregon v. Kennedy*, 456 U.S. at 672, 102 S.Ct. at 2087.

■ In contrast, if a mistrial is declared at defendant's request or with his consent, reprosecution will ordinarily not be barred. *United States v. Bobo*, 586 F.2d 355, 362 (5th Cir.1978). Yet, if the defendant has requested the mistrial, double jeopardy will bar reprosecution if the request is motivated by governmental conduct which is "intended to 'goad' the defendant into moving for a mistrial." *Oregon v. Kennedy*, 456 U.S. at 676, 102 S.Ct. at 2089.

Defendant has abandoned his claim that the prosecutor's error was either conscious or reckless. Instead, his contention is that the mistrial was declared without his request or consent, thereby implicating the *Perez* "manifest necessity" doctrine. Defendant's argument is based upon the portions of the transcript recited above. From those excerpts, defendant argues that he and his counsel were in disagreement over the decision whether to request a mistrial and that, therefore, it is evident that defendant, as opposed to his counsel, neither requested nor consented to the discharge of the jury. But defendant's characterization of the record is not so free from murk as he suggests.

The first portion of the transcript relied on by the defendant is the following exchange between the trial judge and defense counsel:

THE COURT: Did you talk to your man by this time?

MR. STRAGAND: Yes sir, I did. We are not going to be able to work it out.

This latter comment by counsel, especially when read in context, is enigmatic at best. It is unclear who "we" refers to, and even less apparent what they are not going to be able to work out. While the comment may indicate a disagreement between defense counsel and his client, as defendant now suggests, it may equally pertain to the inability of defense counsel and the prosecution to come to terms. We are constrained by the record, and attempts at clarification by present counsel must not be heeded. *Pretti v. Herre*, 403 S.W.2d 568, 569 (Mo.1966).

■ Furthermore, we review the second trial court's denial of defendant's motion to dismiss under the plain error standard. Viewed from that perspective, we cannot say that the evidence of disagreement is so strong that a contrary finding would be plainly erroneous.

■ Defendant also points to the statement of counsel that "[defendant] would very much like to proceed to trial with this jury" and urges that counsel and his client were of two minds regarding the prospect of obtaining a mistrial. Assuming the statement to be a literal expression of the "desires" of the defendant, it need not be understood as excluding the competing desire not to proceed with a trial "tainted" by the introduction of the police report. As noted by the Supreme Court in *Dinitz*, in such circumstances "the defendant generally does face a 'Hobson's choice' between giving up his first jury and continuing a trial tainted by prejudicial judicial or prosecutorial error." *Dinitz*, 424 U.S. at 609, 96 S.Ct. at 1080. Defendant's desire to continue with an empaneled jury does not necessarily mean that he does not also want a maculated prosecution to cease.

██ Whatever confusion may exist in the record as to defendant's personal preference on the question of calling for a mistrial, a later comment of counsel is illuminating. When asked by the trial judge if he was "asking, on behalf of the defendant, for a mistrial," counsel responded, "Yes." This is a direct reference to defendant's acquiescence in the request and is an unequivocal representation that counsel spoke for his client in making that request.

It should also be noted that defendant was present when this question was posed to counsel. The record is destitute of any indication that defendant, either at this time or earlier, expressed any reluctance at having a mistrial declared. The trial court gave defendant's attorney a clear chance to act in his capacity as spokesman for defendant and the person in charge of defendant's case. Defense counsel made a trial strategy decision and moved on it without any apparent protest from defendant.

██ In the absence of such evidence of personal disagreement between defendant and his attorney, it must be concluded that the decision made by trial counsel in this instance did no violence to defendant's right to participate in the important issues involved in his defense. It is recognized that "the accused has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, [or] testify in his or her own behalf." *Jones v. Barnes*, 463 U.S. 745, 103 S.Ct. 3308, 3312, 77 L.Ed.2d 987 (1983); *see* ABA Standards for Crimi-

nal Justice 4–5.2, 21–2.2 (2d ed. 1980).[1] However, "[w]ith the exception of these specified fundamental decisions, an attorney's duty is to take professional responsibility for the conduct of the case, after consulting with his client." *Jones*, 103 S.Ct. at 3313 n. 6.

*Bryant v. State*, 563 S.W.2d 37 (Mo. banc 1978), also elucidates the lawyer's charge and responsibility during the course of trial:

> There certainly is no question but what the responsibility for representing a defendant, including the making of numerous decisions through the proceedings, is lodged with defense counsel. Courts ought not interfere with defense counsel's responsibility in this regard unless the facts of the situation clearly demonstrate that justice requires the interference.

*Id.* at 45.

██ And as held in *Fry v. State*, 504 S.W.2d 250, 251 (Mo.App.1973), "an accused is bound by his counsel's decision as to trial strategy, unless such decision makes a mockery of the proceedings".[2]

Defendant's counsel in moving for the mistrial was doing no more than evaluating the status of the case and making a determination of the particular strategy and course to follow under the circumstances extant. That is what trial counsel does and is supposed to do in any case. In so doing in this case with regard to the mistrial, defense counsel did not trample upon those

---

1. Another "fundamental decision," not effecting the conduct of trial, is the choice of whether to take an appeal. *Jones*, 103 S.Ct. at 3312. With certain limitations, a defendant may also assert personal control by electing to act as his own attorney, *id., Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), although a waiver of the right to counsel must be made knowingly and intelligently. *Faretta*, 422 U.S. at 835, 95 S.Ct. at 2541; *Johnson v. Zerbst*, 304 U.S. 458, 464–65, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938).

2. The current standard for effectiveness of counsel (in contrast to the former "force and mockery" standard) is "that degree of performance which conforms to the care and skill of a

reasonably competent lawyer rendering similar services under the existing circumstances." *Seales v. State*, 580 S.W.2d 733, 735 (Mo. banc 1979), *quoting Reynolds v. Mabry*, 574 F.2d 978, 979 (8th Cir.1978). Furthermore, in order to state a claim of ineffective assistance of counsel under the sixth amendment, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Strickland v. Washington*, — U.S. —, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984).

See also *Love v. State*, 670 S.W.2d 499 (Mo. banc 1984), with regard to trial strategy decisions as bearing on ineffectiveness of counsel.

rights reserved for the defendant's ultimate decision as referred to in *Jones v. Barnes, supra.*

The record taken as a whole does not give us a picture of an attorney and his client at loggerheads over the decision to request a mistrial.[3] Instead, what emerges is an attorney who is unwilling to proceed with a jury that has read an inadmissible police report, yet who is reluctant to allow the prosecution to simply begin all over again following a mistrial. This is not only an understandable dilemma, it is one that is common to defendants faced with unintentional prosecutorial error. *See Dinitz,* 424 U.S. at 608–10, 96 S.Ct. at 1080–81.

▉▉▉▉ Assuming arguendo that the record were to indicate reluctance by the defendant to consent to his counsel's request for a mistrial, our conclusion would not be different. The "request or consent" standard for mistrials which do not bar reprosecution does not require the courts to closely scrutinize the defendant's personal participation in the mistrial decision. The decision to call for a mistrial is in this respect quite different from the decision to forego a fundamental constitutional right such as the right to counsel (*Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)), or the combination of rights relinquished by the entering of a guilty plea (*Boykins v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969)). In these latter instances, there must be "an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst,* 304 U.S. at 464, 58 S.Ct. at 1023; *see also Boykins v. Alabama,* 395 U.S. at 243, 89 S.Ct. at 1712. However, it is clear that the voluntary waiver standard of *Johnson v. Zerbst* does not apply to the decision to request a mistrial. *Dinitz,* 424

U.S. at 609 n. 11, 96 S.Ct. at 1080 n. 11. As the United States Supreme Court explained:

> [T]raditional waiver concepts have little relevance where the defendant must determine whether or not to request or consent to a mistrial in response to judicial or prosecutorial error. [citations omitted.] In such circumstances, the defendant generally does face a 'Hobson's choice' between giving up his first jury and continuing a trial tainted by prejudicial error or prosecutorial error. The important consideration, for purposes of the Double Jeopardy Clause, is that the defendant retain primary control over the course to be followed in the event of such error.

*Id.* at 609, 96 S.Ct. at 1080.[4]

It is this inherent ambiguity in the prospect of requesting a mistrial which both obviates the need for close scrutiny of the defendant's personal understanding of the problem and renders the decision uniquely suited to resolution by counsel. Thus, it has been held that a defendant may not later challenge a request for mistrial made by counsel on the ground that defendant did not personally concur in the decision. *United States v. Bobo,* 586 F.2d at 366; *Adkins v. Bordenkircher,* 517 F.Supp. 390, 402 (S.D.W.Va.1981), *aff'd,* 674 F.2d 279, 283 (4th Cir.1982); *Jeffers v. United States,* 461 F.Supp. 300, 305 (N.D.Ind. 1978); *State v. Engleman,* 634 S.W.2d 466, 470 (Mo.1982).[5] Although none of these cases devolved upon the claim that defendant overtly disagreed with his counsel, the effect is the same. In *Adkins,* the precise claim was that defendant was not informed that a motion for continuance made by counsel amounted to a motion for mistrial. *Id,* 517 F.Supp. at 402. There can be little

---

**3.** Had the defendant expressed actual disagreement with counsel's motion for mistrial at the time it was made, it would be appropriate for the trial judge to make further inquiry, advising him of his rights and ascertaining his intentions.

**4.** This last statement does not mandate our attention to the defendant as opposed to his counsel, but rather to the defendant as opposed to

the court. *United States v. Bobo,* 586 F.2d at 364 n. 6.

**5.** *Compare State v. Sanders,* 539 S.W.2d 458, 461 (Mo.App.1976), in which defense counsel's waiver of his client's right to be present during a pretrial suppression hearing was held to be valid notwithstanding that defendant had not consented to the waiver.

difference between a mistrial motion made without the defendant's knowledge and one made under the circumstances that obtain in the case *sub judice*. In *Bobo*, it was held that defendants had consented *through counsel* to the mistrial and that their "personal concurrence is not required." *United States v. Bobo*, 586 F.2d at 366.

The present case "is one of those instances where 'a defendant's valued right to have his trial completed by a particular tribunal must ... be subordinated to the public's interest in fair trials designed to end in just judgments.'" *United States v. Bobo*, 586 F.2d at 364, 365, *quoting Wade v. Hunter*, 336 U.S. at 689, 69 S.Ct. at 837. Any different result would place trial courts in an untenable position. Trial courts faced with the slightest indication that defendant did not concur in his counsel's decision would be forced to allow the trial to proceed, "despite a legitimate claim of seriously prejudicial error," *Dinitz*, 424 U.S. at 610, 96 S.Ct. at 1081, and thus, despite the attendant likelihood of ultimate reversal, in order to avoid the possibility that any subsequent reprosecution would be barred. *See id.* at 610 n. 12, 96 S.Ct. at 1081 n. 12. Such a result would serve neither the right of a defendant to be subject to only one prosecution nor the right of the state to "one full and fair opportunity to convict those who have violated its laws." *Ohio v. Johnson*, —— U.S. ——, ——, 104 S.Ct. 2536, 2542, 81 L.Ed.2d 425 (1984).

■ Under the present circumstances, we cannot say that defendant's second trial court plainly erred in denying defendant's motion to dismiss.

Defendant's second point concerns the persistent offender statute—§ 558.016, RSMo 1978—and the sufficiency of the proof that he was the same person who was previously convicted of two prior felonies. The trial court took judicial notice of its own files in the previous cases. Those files designated the defendant as "David Rose a/k/a David Fitzpatrick." Documents in those files were signed by the defendant using the name "David Fitzpatrick."

■ For purposes of sentence-enhancement statutes that are conditioned on previous convictions, a prima facie case is made for identification of the defendant as a prior offender by the identity of the names of the person charged and the record of prior conviction. *State v. Garner*, 538 S.W.2d 937, 943 (Mo.App.1976). However, when a variance appears between the name contained in a prior conviction record and the name of the person on trial, some additional evidence is generally required to show that both names identify the same person. *Ballard v. State*, 615 S.W.2d 589, 592 (Mo.App.1981).

■ In this case the requisite additional evidence produced by the state was that the defendant in previous prosecutions had signed his name "David Fitzpatrick." That is sufficient to make a prima facie showing that the defendant and the "David Fitzpatrick" of the prior convictions are the same person.

The additional evidence that the defendant in the previous prosecutions signed his name "David Fitzpatrick" is sufficient to make a prima facie showing that the present defendant and the former defendants are one and the same.

Defendant contends that this result is contrary to the holding in *State v. Garner*. That case, however, is clearly distinguishable. In *Garner*, the defendant was tried and convicted as "Brenda Garner." A previous Kansas conviction was shown for a "Brenda Haywood." A detective testified that "Brenda Garner" was also known as "Brenda Haywood," but he had no knowledge of any previous conviction under that name, nor did he testify that he knew Garner as Haywood at or around the time of the conviction. *Id.* at 943. The deficiency in this evidence is that it failed to place the name which was purportedly used at a previous time within the appropriate temporal context. The evidence in the present case suffers from no such flaw. The previous defendant called himself "David

Fitzpatrick," as does the present defendant. This constitutes prima facie identity.

Judgment affirmed.

All concur.