STATE of Missouri, Plaintiff-Respondent,

v.

Milton GATLIN, Jr., Defendant-Appellant.

No. 37518 (36804).

Missouri Court of Appeals,
St. Louis District,
Division One.

July 13, 1976.

James C. Jones, G. Jeffrey Lockett, Asst. Public Defenders, St. Louis, for defendant-appellant.

Preston Dean, Robert H. House, Asst. Attys. Gen., Jefferson City, Brendan Ryan, Circuit Atty., Nels C. Moss, Jr., Asst. Circuit Atty., St. Louis, for plaintiff-respondent.

WEIER, Presiding Judge.

Defendant was convicted of burglary in the first degree, robbery in the first degree, and two counts of assault with intent to maim with malice. He was sentenced to fifteen years in the custody of the Department of Corrections on each count, the sentences to run concurrently.

The charges against the defendant arose out of an episode which occurred just after midnight of April 16, 1974, in the very first few minutes of April 17, 1974. Mr. and Mrs. Joseph Lewandoski were awakened at their apartment by a loud voice. Suddenly the door of the apartment was broken open. Mr. and Mrs. Lewandoski were assaulted and some of their money and other possessions were taken from them.

Defendant's first contention is that his opportunity for a fair trial was prejudiced because of surprise which occurred when evidence revealed that the crimes charged were committed at a different time than the defendant had been led to believe. Defendant presented evidence of an alibi for the night of April 17–18, 1974, whereas the crimes had actually occurred on April 17 just after midnight. A review of the evidence and other matters which set the time of the occurrence could leave the impression that the crimes were committed about midnight of April 17, 1974, rather than the early morning hours of that date during the previous night. For instance, in certain grand jury testimony of Joseph Lewandoski which had been furnished to defendant at his request, a leading question had been asked of the witness as to whether the crimes were committed in the early morning of the 18th and the witness responded in the affirmative. One of the investigating officers testified that he went to the Lewandoski apartment on April 17th about midnight. Both Mr. and Mrs. Lewandoski testified at the time of trial that the occurrence was approximately midnight on April 17. Such misinformation or misinterpretation as to the time of day, however, is clearly contradictory to many other sources of information which clearly indicated that the crimes occurred on April 17, 1974. The indictment charged defendant with committing the crimes on April 17, 1974. Defendant's trial attorney was furnished with a copy of the police report which indicated that the crimes occurred on April 17, 1974 at 12:10 a.m. At the time of trial, the court informed the jury panel that the crime was one charged by the state to have occurred on April 17, 1974. The prosecutor in his opening statement informed the jury that the crime occurred shortly after midnight on April 17. Thereafter the first reference to the early morning of the 18th occurred on cross-examination of the investigating officer by defendant's counsel when he was asked the leading question as to whether he arrived at the apartment on the morning of the 18th. On redirect, the officer was redirected to what had occurred on April 17. Another officer testified that he had investigated the crime on April 17, 1974 shortly after midnight. Mr. Lewandoski refers in his testimony to the occurrence as being on April 17, 1974 at approximately midnight. No reference was made to April 18, and he further testified that prior to midnight his door was kicked open. Mrs. Lewandoski, in

response to a leading question on direct examination, indicated that she lived at the apartment on the 17th of April at approximately midnight, and further testified that she was attacked by the defendant on a Tuesday, which would have placed it on April 16, 1974. Furthermore, Mrs. Lewandoski was admitted to the hospital following the assault upon her, as shown by the hospital records, at 1:02 a.m. on April 17, 1974.

Later, when defendant put on alibi witnesses, they were accounting for his presence at a place different from the scene of the crime on the night of April 17–18, and when this was brought out upon cross-examination of one of the witnesses, defendant's counsel claimed surprise and asked the court for a mistrial.

■ As a general rule, surprise is not a ground for a new trial. *State v. Henson*, 290 Mo. 238, 234 S.W. 832, 834[6] (1921). The declaration of a mistrial has been described as a drastic remedy. The trial court should only exercise this power in extraordinary circumstances. *State v. Brown*, 528 S.W.2d 503, 506 (Mo.App.1975). The proper relief, once surprise occurs in the trial of the case, is to ask immediately for a postponement or continuance. *State v. Biel*, 169 S.W.2d 375, 376[1] (Mo.1943); *State v. Hohensee*, 333 Mo. 161, 62 S.W.2d 436, 438[3] (1933); *State v. Henson, supra*, 234 S.W. at 834[8]. Here, the defendant was granted a recess from about 3:00 p. m. until 9:30 the next morning. He made no claim that the time was insufficient nor that any new evidence had been found which would be helpful in his defense. His request for a new trial was based upon the assertion that the misleading effect of the irrelevant alibi which was presented was prejudicial, confused the jury, and denied him the right to a fair trial. But the only testimony which was adduced prior to this time by the defendant consisted of alibi witnesses who testified with respect to his presence away from the scene of the crime during the night of April 17–18. After the recess, he called upon a witness and took the stand himself to adduce evidence of his presence other than at the scene of the crime on the night of April 16–17. No complaint is made as to the sufficiency of the evidence to sustain the charges made against the defendant in the indictment, and we are more than satisfied of its sufficiency. Although irrelevant, the alibi testimony with respect to the night of April 17–18 could not have been prejudicial but merely strengthened defendant's contention that he was not at or near the Lewandoski apartment either night.

■ Defendant's second contention is that the trial court erred in permitting the prosecutor to impeach one of his witnesses. This occurred during the examination of a policeman who had been called to the victims' apartment just after the robbery and assault, and had spoken to the victims at that time. In cross-examination, the defendant brought out the officer's recollection of the conversation with the Lewandoskis immediately after his arrival. Some of this testimony ran counter to some of the testimony of the Lewandoskis, particularly with regard to whether one or two persons invaded their apartment and assaulted them. On redirect examination, the policeman testified that his recollection of the conversation came from notes that he had taken at the time. On recross-examination, he then testified that his testimony was not influenced by the report but it was his own independent memory. The state then questioned the officer as to how many reports he had written since that date and objection was made on the grounds that this was an impeachment of the state's own witness. The objection was overruled and defendant contends error upon the statement of the general rule in *State v. Castino*, 264 S.W.2d 372, 375 (Mo.1954), where it was said: " * * * it is the general rule that a party by calling a witness vouches for his credibility and will not be permitted to cross-examine or impeach him, except in case of entrapment, or where he is hostile."

■ Defendant overlooks the fact, however, that this was not impeachment of the witness. Upon redirect examination, a witness may properly be interrogated as to

any matter which tends to refute, weaken or remove inferences, impressions, implications or suggestions which might have resulted from testimony on cross-examination. *State v. McKinney*, 475 S.W.2d 51, 54[2] (Mo.1971). "Impeachment is directed to the credibility of the witness for the purpose of discrediting him. It ordinarily furnishes no factual evidence. Contradiction, on the other hand, is directed to the accuracy of testimony and supplies additional factual evidence to be considered along with such testimony." *Talley v. Richart*, 353 Mo. 912, 185 S.W.2d 23, 26[6] (1945). The questions asked of the patrolman did not seek to arouse the hostility or suspicion of the jury. See *State v. Sutton*, 454 S.W.2d 481, 488[6, 7] (Mo. banc 1969). They sought to clarify the previous testimony and were not used for the purpose of discrediting the witness.

The judgment of the trial court is affirmed.

McMILLIAN and RENDLEN, JJ., concur.