**STATE of Missouri, Plaintiff–Respondent,**

v.

**David RIPPEE, Defendant–Appellant.**

**No. 25293.**

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 4, 2003.

Amy M. Bartholow, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen. and Charnette D. Douglass, for respondent.

NANCY STEFFEN RAHMEYER, Chief Judge.

David Rippee ("Appellant") was charged by information with conspiracy to steal by deceit, pursuant to section 564.016.[1] At the conclusion of a jury trial, he was convicted of the conspiracy charge and the trial court, finding him to be a prior and persistent offender, sentenced him to ten years in the Missouri Department of Corrections. Appellant now appeals, alleging that the trial court abused its discretion by permitting the State to introduce certain evidence that was not disclosed to Appellant until the day before the trial commenced. We affirm.

Appellant does not challenge the sufficiency of the evidence. Thus, viewed in the light most favorable to the verdict, *see* *State v. Baker*, 103 S.W.3d 711, 713 (Mo. banc 2003); *State v. Werner*, 9 S.W.3d 590, 593 (Mo. banc 2000), the relevant facts in Appellant's case are as follows:

On October 13, 2001, Appellant contacted Thomas Richardson ("Richardson"), an ex-convict who had worked on Appellant's vehicles and done other odd jobs for Appellant in the past, about a job opportunity. In particular, Appellant wanted Richardson to steal and dispose of one of his vehicles. In exchange for Richardson's services, Appellant promised to give him one of his vans that Richardson had been working on, as well as $90 cash. At the time of the contact, Appellant also gave Richardson $10 for gas money and a phone number at which Appellant could be reached.

Following his conversation with Appellant, Richardson, who was on felony probation at the time, contacted Jason Morgan ("Detective Morgan"), a detective with the Poplar Bluff, Missouri Police Force. Richardson relayed the contents of his conversation with Appellant to Detective Morgan; the two of them then went to a nearby gas station to call Appellant. Once there, Detective Morgan wired the pay phone with recording equipment and Richardson then called Appellant at the number Appellant had given him.

Appellant answered the phone and proceeded to instruct Richardson on how he should go about disposing of the vehicle. Specifically, Appellant informed Richardson that he would leave the car in his front yard with the door unlocked and the ignition switch in the "on" position. Appellant instructed Richardson to drive the vehicle to a vacant field nearby, break its windows to simulate a car theft, douse it with five gallons of gasoline, and set it on fire. Appellant also instructed Richardson to make sure that the fire destroyed both the paint job and the tires, as Appellant intended to seek insurance reimbursement not only for the van, but also for improvements he had allegedly made in the form of a paint job and new tires.

Later that day Richardson and Detective Morgan drove to Appellant's house where they found the van sitting unlocked with the key switch in the "on" position. Richardson then started the vehicle and drove it to an underground police garage

---

1. All references to statutes are to RSMo 2000, unless otherwise indicated.

where it was photographed.[2] After the vehicle had been secured, Richardson and Detective Morgan drove to another pay phone and again called Appellant. During this conversation, which was also recorded by Detective Morgan, Richardson informed Appellant that he had completed the job and that the van had been destroyed, to which Appellant responded, "Yeah, I know. I don't want to hear nothing else about it."

The next day, on October 14, 2001, Appellant called the police and reported his van as stolen. Later that month, he contacted his insurance company to report that his van had been stolen and to file a claim for reimbursement. When Appellant informed the insurance company that he was also seeking reimbursement for improvements he had allegedly made to the vehicle, the company advised him that, in order to receive this additional compensation, he would have to submit receipts documenting the improvements. After Appellant provided the company with receipts for a paint job and new tires, the company issued him a check in the amount of $3000. When Appellant subsequently attempted to retrieve the check from the insurance company, he was placed under arrest for conspiracy to steal by deceit.

The day before Appellant's trial began, the State informed defense counsel that it intended to introduce the receipts Appellant had submitted to his insurance company. Defense counsel filed a motion in limine to exclude the receipts, arguing that, by failing to disclose the receipts following either of Appellant's two pretrial discovery motions, the State had violated the discovery requirements of Rule 25.03(A).[3] In response, the prosecutor argued that the receipts were an "integral part" of the State's case, and that he did not learn about the receipts until the day before trial, when he spoke with Appellant's insurance agent, Lloyd Bell. The trial court subsequently denied Appellant's motion in limine. At the conclusion of his trial, Appellant was convicted of conspiracy to steal by deceit, and was sentenced accordingly. In his sole point on appeal, Appellant alleges that the trial court abused its discretion in permitting the State to introduce evidence that it disclosed to defense counsel less than twenty-four hours before trial.

■ Rule 25.03(A) requires that, upon request of the defendant, the State must disclose to the defendant all material information within the State's possession or control. This duty to disclose includes not only information that is actually known to the prosecutor, but also information that may be learned through reasonable inquiry. *State v. Waelder*, 800 S.W.2d 802, 803 (Mo.App. E.D.1990). The purpose of discovery is to provide the defendant with an appropriate opportunity to avoid surprise and to prepare for trial in advance. *State v. Carter*, 939 S.W.2d 556, 557 (Mo.App. W.D.1997) (citing *State v. Mease*, 842 S.W.2d 98, 108 (Mo. banc 1992)).

■ If the State fails to comply with Rule 25.03, the trial court is permitted to levy various sanctions against the State, including the exclusion of evidence. Rule 25.16. However, discovery sanctions are not mandatory under Rule 25.16, and the trial court is granted considerable discre-

---

**2.** The photographs taken in the parking garage showed that big patches of paint were missing from the van and, in connection with receipts submitted to the insurance company, corroborated Richardson's testimony that Appellant intended to seek reimbursement for improvements to the vehicle that were never actually made.

**3.** All rule references are to Supreme Court Rules (2002), unless otherwise stated.

tion in determining whether or how to impose a sanction. *State v. Whitfield,* 837 S.W.2d 503, 507 (Mo. banc 1992). The standard for reviewing a claim that a defendant was denied meaningful discovery is whether the trial court abused its discretion to such an extent as to result in fundamental unfairness. *Mease,* 842 S.W.2d at 108; *State v. Royal,* 610 S.W.2d 946, 951 (Mo. banc 1981). "An abuse of discretion occurs when a trial court's ruling is clearly against the logic of the circumstances then before the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration." *Hancock v. Shook,* 100 S.W.3d 786, 795 (Mo. banc 2003).

In the case at hand, Appellant cites *State v. Varner,* 837 S.W.2d 44 (Mo.App. E.D.1992) for the proposition that a reversal is mandated when material evidence is not disclosed to the defendant until the eleventh hour. In *Varner,* the defendant was arrested for shoplifting from a department store, and was subsequently charged with the offense of stealing. *Id.* at 45. On the morning that defendant's trial was to commence, the prosecutor informed defense counsel that he intended to introduce evidence that the defendant used a "crow name" when he was initially apprehended by the store's security guard. *Id.* Defense counsel claimed unfair surprise, and asked the court to either exclude the evidence or grant a continuance to allow the defendant an opportunity to investigate the new evidence. *Id.* Because the trial court believed the prosecutor's assertion that he himself had only discovered the evidence that morning, the trial court found that no discovery violation had been committed, and denied the defendant's motions. *Id.*% On appeal, the court reversed the defendant's conviction after finding that "reasonable inquiry" by the prosecutor would have uncovered the evidence prior to the day of trial, and determining that the trial court's refusal to impose a discovery sanction may have resulted in fundamental unfairness. *Id.* at 45–46.

Despite the factual similarities between *Varner* and Appellant's case, the two cases are distinguishable in a manner that is dispositive. In both cases, upon receiving notice of new evidence immediately before trial, defense counsel sought to have the evidence excluded as a discovery sanction; however, in *Varner,* defense counsel also asked for a continuance in the event that exclusion was not granted. *Id.* at 45. It was precisely because the trial court failed to exclude the evidence *or* give defense counsel additional time to investigate the evidence that the appellate court reversed defendant's conviction, voicing concerns that the trial court's failure to take any remedial action may have resulted in fundamental unfairness. *Id.*

■ In the present case, Appellant never asked for a continuance to investigate the origin or authenticity of the receipts, or to adjust Appellant's defense so that it addressed the existence of the receipts. Instead, Appellant sought only to have the evidence excluded, and appeals now that the trial court declined to grant that more drastic remedy. While we do not quibble with Appellant's assertion that the late-hour disclosure of the receipts constituted surprise, under Missouri law, surprise is generally an insufficient ground for a new trial. *State v. Candela,* 929 S.W.2d 852, 869 (Mo.App. E.D.1996); *State v. Brass,* 781 S.W.2d 565, 566 (Mo.App. E.D.1989); *State v. Gatlin,* 539 S.W.2d 731, 733 (Mo. App.1976). Instead, "[o]nce surprise has occurred, the proper remedy is to request a continuance or postponement." *Brass,* 781 S.W.2d at 566. Furthermore, Appellant's failure to move for a continuance discredits his claim that he suffered prejudice as a result of the admission of the

receipts into evidence. *State v. Huchting*, 927 S.W.2d 411, 420 (Mo.App. E.D.1996). Inasmuch as Appellant failed to seek a continuance, we cannot say that the trial court committed an abuse of its considerable discretion.

Additionally, we note that while Appellant objected to the admission of the receipts into evidence, he did not object to Bell's testimony regarding the existence, purpose, and contents of the receipts. Under Missouri law, it is well-settled that even if evidence has been admitted in error, such an error is not considered prejudicial where similar evidence has either been properly admitted elsewhere in the case or has come into evidence without objection. *State v. Brown*, 949 S.W.2d 639, 642 (Mo.App. E.D.1997) (citing *State v. Matheson*, 919 S.W.2d 553, 557–58 (Mo. App. W.D.1996)).

In light of Appellant's failure to seek a continuance, as well as the cumulative evidence regarding the receipts which was properly admitted at trial, Appellant has failed to demonstrate prejudice, let alone fundamental unfairness. The judgment is affirmed.

PARRISH, J., and SHRUM, J., concur.