**STATE of Missouri, Appellant,**

v.

**Sedrick WRICE, Respondent.**

**No. ED 88727.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Oct. 16, 2007.

Timothy O'Leary, Assistant Circuit Attorney, Office of the Circuit Attorney, The Carnahan Courthouse, Saint Louis, MO, for appellant.

Jessica M. Hathaway, Office of the State Public Defender, Saint Louis, MO, for respondent.

## OPINION

GLENN A. NORTON, Judge.

The State of Missouri appeals the judgment of the trial court dismissing the case against Sedrick Wrice on the grounds that retrial was barred by the double jeopardy clause of the United States Constitution. *See* U.S. Const. amend. V. We affirm.

## I. BACKGROUND

On March 25, 2004, Wrice was charged by way of indictment with robbery in the first degree and armed criminal action. At the arraignment, the State filed its request for disclosure, asking Wrice to disclose his intention to rely on the defense of alibi. No such intention was disclosed by Wrice. During the period following the arraignment and before the trial, Wrice's case was transferred from the public defender's office to a private attorney, and then from the private attorney back to the public defender's office. The public defender who was ultimately assigned to the case did not meet with Wrice until Mon-

day, November 6, 2005. The case went to trial the following day and the jury was seated and sworn on November 8, 2005.

The State rested its case on Thursday, November 9, 2005. After the court denied Wrice's motion for judgment of acquittal, defense counsel asked the court to "take up the issue of the alibi witness" that was apparently raised the day prior. The court directed defense counsel to make an offer of proof regarding the alibi witness. Defense counsel explained that when she met with Wrice on the morning of November 6, Wrice asked her to contact Lawrence Roberts because Wrice knew that he was working for Roberts on the day of the robbery. Upon learning this, defense counsel made numerous attempts to contact Roberts. Finally, at seven in the morning on November 9, defense counsel received a return phone call from Roberts. During the call, Roberts stated that he had given the original public defender a notebook in which he recorded by date the names, work hours, and amount paid for each of the day laborers that he employed. Defense counsel looked through the case file and found the notebook. At that point, defense counsel asked Roberts to appear in court that morning.

The trial court decided to allow defense counsel to make an offer of proof under examination. Roberts was questioned by defense counsel, by the State and by the court. Roberts testified that on December 12, 2004, the day of the robbery, Wrice was working for him in Jennings, Missouri. According to Roberts, he picked Wrice up around 7:30 in the morning and took him home after finishing the day's work at 5:30 in the evening. Roberts further testified that he was with Wrice for the entirety of the day, with the exception of twenty minutes when Roberts went to purchase lunch for his crew. Roberts's notations in his notebook corroborated his testimony.

The testimony given by Roberts was in direct contradiction to the State's case, and to the victim's identification of Wrice. But the State learned of the alibi witness at the close of its evidence and had had no opportunity to investigate or prepare for this information. Thus, the court found that the State would be unduly prejudiced if Roberts was allowed to testify. However, the court determined that while the problem was occasioned by the defense, there was no bad faith on the part of Wrice or defense counsel. Therefore, the court believed that it would be unfair to Wrice to exclude Roberts's testimony.

The court asked the State for its position on the issue of allowing Roberts to testify. The State responded by requesting that the court declare a mistrial. The court considered continuing the case and asked the State what they would need to do to prepare for the alibi witness and how much time they would need. Counsel for the State answered, "I have no idea how long it's going to take." Thereafter, the court found that because the prejudice to the State was "occasioned by the defendant," a mistrial was "the only thing that [made] sense."

Subsequent to the court's indication that it was going to grant a mistrial, the State notified the court that it had discovered a case, *State v. Stevenson,* 589 S.W.2d 44 (Mo.App. E.D.1979), which suggested that double jeopardy would attach unless Wrice consented to a mistrial. In *Stevenson,* we reviewed a trial court's decision to declare a mistrial where the State claimed surprise as a result of defense counsel's attempt to call a witness that the State had previously been told would not testify. *Id.* at 48–49. Our review in *Stevenson* found that because the trial court was convinced that there was manifest necessity, there was no abuse of discretion in ordering a mistrial. *Id.* at 49. We noted that in determining

manifest necessity existed, the trial court could consider, among other things, the fact that the defendant did not object to "the granting of a new trial." *Id.*

In the present case, the trial court reviewed *Stevenson* and asked defense counsel whether they objected to the mistrial, to which they responded that they "did not object to a mistrial, but did not consent." The court then discussed the facts of the *Stevenson* case and found them to be "on all fours" with the situation at hand. Specifically, the court found that, like in *Stevenson*, Roberts's testimony was crucial to the defense, but "at the same time the State ... had no opportunity to prepare for a witness who in fact completely not only proves great reasonable doubt, but proves actual innocence." Based on these facts, the court found that to allow the trial to proceed would result in a "manifest injustice"—to either the State if Roberts was allowed to testify, or to Wrice if Roberts was not—and ordered a mistrial in the case.

On September 11, 2006, the parties appeared to retry the case. Citing *State v. Gatlin*, defense counsel moved to dismiss the case with prejudice on the grounds that double jeopardy had attached in the earlier proceeding, thus precluding a retrial. 539 S.W.2d 731 (Mo.App.1976). The appellate court in *Gatlin* found that when surprise occurs in the trial of the case, the proper remedy is a continuance. *Id.* at 733. In presenting *Gatlin* to the court, defense counsel argued that because the State rejected the court's offer to postpone the proceedings and instead sought a mistrial, it should be barred from prosecuting a subsequent trial on the same counts. In light of *Gatlin*, the court reviewed its earlier decision to grant a mistrial and determined that the appropriate remedy, upon surprise to the State, was instead to order a continuance. Based on its implicit find-

ing that the order of mistrial in the first proceeding was erroneous, the trial court entered an order and judgment dismissing the case with prejudice. The State appeals.

## II. DISCUSSION

### A. Standard of Review and Applicable Law

■■■ In its sole point on appeal, the State argues that the trial court abused its discretion by granting Wrice's motion to dismiss on the grounds that double jeopardy precluded a retrial following a mistrial in the initial proceeding. Missouri law protecting against double jeopardy applies only to retrial after an acquittal, and thus does not apply here. Mo. Const. art. I, sec. 19; *State v. Tolliver*, 839 S.W.2d 296, 298–99 (Mo. banc 1992). Instead, in arguing that double jeopardy attached, thereby precluding retrial, Wrice relies on the Fifth Amendment to the United States Constitution, under which double jeopardy attaches when the jury is impaneled and sworn. *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 569, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977). The prohibition against putting a defendant twice in jeopardy is based upon the fundamental right of a defendant to have his case heard to completion by a particular tribunal. *City of Smithville v. Summers*, 690 S.W.2d 850, 858 (Mo.App. W.D.1985); *see also Kemper v. Vincent*, 191 S.W.3d 45, 51 (Mo. banc 2006), *citing United States v. Jorn*, 400 U.S. 470, 484, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971) ("Once a trial has begun, the defendant has a right to have his trial completed by the jury that has been selected."). Double jeopardy, however, will not preclude a retrial if a defendant requests or consents to a mistrial. *State v. Fitzpatrick*, 676 S.W.2d 831, 835 (Mo. banc 1984).

Where, as here, the defendant did not consent to a mistrial, we must review the trial court's decision in the initial proceeding to grant a mistrial for an abuse of discretion in order to determine whether double jeopardy precludes retrial. *Kemper,* 191 S.W.3d at 49. Double jeopardy will bar a retrial unless there was manifest necessity to declare a mistrial. *Id.* at 51. Manifest necessity exists where "a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings." *Fitzpatrick,* 676 S.W.2d at 835.

In this case, where the trial court found that double jeopardy precluded retrial, we must determine whether or not the granting of the mistrial in the preceding action was a manifest necessity. If there was no manifest necessity to initially grant a mistrial, then double jeopardy will preclude the State from pursuing a new trial on the same charges brought in the preceding action.

## B. Determination of Whether Manifest Necessity Required a Mistrial

We find that the trial court's determination that double jeopardy precluded the second trial was proper because the granting of a mistrial in the first proceeding was not a manifest necessity. In the first trial, after the voir dire of the alibi witness, the court asked the State for its position on allowing Roberts to testify. The State responded that "the only equitable thing is for the court to declare a mistrial". After some discussion and a recess, the court was presented with *Stevenson,* upon which it relied in its ultimate decision to grant the mistrial.

In *Stevenson,* after discovering that a particular witness was unavailable, defense counsel called a different witness despite previously telling the State that this second witness would not testify. 589 S.W.2d at 48. The State claimed surprise, but asked for no specific relief. *Id.* The trial court found that the State had been put at a disadvantage but also thought it too extreme a measure to exclude the witness's testimony. *Id.* At the same time, the court believed that the witness, who had a history of narcotics addiction, would need to have her rights explained to her by disinterested counsel before she took the stand. *Id.* The court was concerned that the witness could end up being charged with a felony as a result of her testimony. *Id.* The court declared a mistrial *sua sponte.* *Id.* On appeal, this Court found that the trial court, after considering all of the alternatives and determining that a voir dire by the State would not dispose of the issue, was convinced that there was a manifest necessity to "declare a mistrial to promote the ends of justice." *Id.* at 49. This Court, finding sufficient justification for declaring a mistrial, held that the defendant's retrial was not barred by double jeopardy. *Id.*

In the case at bar, the trial court found that whether it decided to allow or disallow the testimony of the alibi witness, its ruling would result in a "manifest injustice." The alibi witness directly contradicted the State's case; the court found that the witness's testimony provided an "absolute alibi." It believed that because there was no bad faith on the part of the defendant, it would be an injustice to preclude the testimony and prevent the defense from presenting the alibi defense. The court, however, also believed that the State was unduly prejudiced by its inability to prepare for the witness and to attempt to verify certain facts to which Roberts testified on voir dire.

The trial court reviewed *Stevenson* and found it to be "on all fours" with the situation at hand. The court concluded

that under the principles set forth in *Stevenson*, there was no risk of double jeopardy precluding retrial if the State's motion for a mistrial was granted. We agree with the trial court that the facts of *Stevenson* are similar to the facts here. However, our holding in *Stevenson* that manifest necessity existed did not consider whether, in the words of the Missouri Supreme Court, the "ends of public justice would ... be served by a continuation of the proceedings." *Fitzpatrick*, 676 S.W.2d at 835.

■ As a starting point, we look to *United States v. Perez*, 9 Wheat. 579, 22 U.S. 579, 580, 6 L.Ed. 165 (1824), for the definition of "manifest necessity" upon which courts must rely when deciding whether to grant a mistrial. In *Perez*, the Supreme Court recognized that

> the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. *To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes.*

*Id.* (emphasis ours). The need to exercise great caution when declaring a mistrial is consistent with the fundamental right of a defendant to have his case heard to completion by the jury that has been selected. *Jorn*, 400 U.S. at 484, 91 S.Ct. 547. Therefore, if less drastic alternatives than a mistrial are available they must be employed "in order to protect the defendant's interest in promptly ending the trial." *Harris v. Young*, 607 F.2d 1081, 1085 (4th Cir.1979). Hence, where a defendant does not consent, a mistrial is only appropriate where "a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings." *Fitzpatrick*, 676 S.W.2d at 835. Accordingly, under the law as stated by the Missouri Supreme Court in *Fitzpatrick*, before a trial court decides to grant a mistrial in a case, it must first consider whether a continuance would address the problem with which it is presented.

■ Based upon these principles, the general rule in Missouri is that surprise is not a ground for a new trial. *State v. Henson*, 290 Mo. 238, 234 S.W. 832, 834 (1921); *State v. Brass*, 781 S.W.2d 565, 566 (Mo.App. E.D.1989); *State v. Rippee*, 118 S.W.3d 682, 685 (Mo.App. S.D.2003); *Gatlin*, 539 S.W.2d at 733. Instead, "[t]he proper relief, once surprise occurs in the trial of the case, is to ask immediately for a post-ponement [sic] or continuance." *Gatlin*, 539 S.W.2d at 733, *citing State v. Biel*, 169 S.W.2d 375, 376 (Mo.1943), *State v. Hohensee*, 333 Mo. 161, 62 S.W.2d 436, 438–39 (1933), *State v. Henson*, 234 S.W. at 834.

In *Stevenson*, we noted that the trial court was concerned not only about the potential prejudice to the parties, but also about the rights and protection of the surprise witness who faced possible criminal charges. 589 S.W.2d at 48. It "appeared to the trial court that a voir dire by the State would not dispose of the issue." *Id.* at 49. The mistrial sought to remedy, at least in part, the risk to the potential witness. *Id.* at 48. While the implication is that the risk to the witness could not have been easily remedied by a continuance, the witness was in fact called, and did testify, in the second trial. *Id.* at 46. Thus, it is clear that the risk to the witness was ultimately not a factor in the witness's willingness or availability to testify on Mr.

Stevenson's behalf. As a result, we are not convinced that a continuance could not have addressed the problem in *Stevenson.* To the extent *Stevenson* is inconsistent with the Missouri Supreme Court's holding that a manifest necessity exists only where the ends of public justice would not be served by a continuance, it should not be followed.

Faced with the motion to dismiss the second trial in this case, the court, by necessity, had to review its initial decision to grant a mistrial. In deciding that its decision to order a mistrial was incorrect because the appropriate remedy was a continuance, the trial court implicitly determined that no manifest necessity existed in the first trial. We agree that manifest necessity to declare a mistrial did not exist. The mistrial was sought and ordered in an effort to remedy the surprise to the State. The surprise to the State, however, could have been tempered by a continuance rather than a mistrial. In fact, the trial court and the State discussed several facts that would need to be investigated before the alibi witness was allowed to testify. The trial court entertained the possibility of a continuance, but when the State was asked how much time it would need, it answered, "I have no idea how long it's going to take." Instead of postponing the case to allow time for the State to attempt to determine the accuracy and truthfulness of the alibi witness's testimony, the court chose to grant the State's motion for a mistrial. The State, having originally requested the mistrial, not only declined the opportunity for a continuance, but also declined to offer assistance by estimating how much time it might need. Under these facts, the State should not be allowed to avoid the application of double jeopardy.

We find that because a less drastic remedy was available to the court in the form of a continuance, there was no manifest necessity to declare a mistrial, and thus the trial court's decision to declare a mistrial was an abuse of discretion. The State requested the mistrial and did not accept the trial court's offer to order a continuance. The defense did not consent to the mistrial. Therefore, double jeopardy, having attached when the jury was sworn in the initial trial, precludes the State from retrying Wrice on the same charges. Accordingly, we agree with the decision of the trial court in the second trial to grant Wrice's motion to dismiss.

### III. CONCLUSION

The judgment dismissing the counts against Wrice is affirmed.

ROY L. RICHTER, P.J., and CLIFFORD H. AHRENS, J., concur.