WILLIAM W. FRANCIS, JR., J.
Oren Rea Rinehart[2] ("Rinehart") was found guilty by a jury of leaving the scene of a motor vehicle accident, in violation of section 577.060.[3] The trial court sentenced Rinehart to three years in prison. In one point on appeal, Rinehart asserts the trial court plainly erred in failing to grant him a new trial after the prosecutor, in closing argument, made references to Rinehart's possible intoxication on the night of the accident. Finding no merit to Rinehart's point, we affirm the trial court's judgment.
Factual and Procedural History
Rinehart's claim is unpreserved. He requests plain error review, which contemplates two steps. First, the reviewing court ascertains whether there was plain error-that is, error, occasioned by the trial court, which should have been "evident, obvious, and clear to the trial court" at the time of the error, based "on the record then before it. " State v. Hunt , 451 S.W.3d 251, 260, 264 (Mo. banc 2014) (emphasis added); see Rule 30.20.[4] For this purpose, we do not view the facts in the light most favorable to the verdict, as the trial court would not have had the benefit of those findings at the time of the alleged error. Hunt , 451 S.W.3d at 260 ; cf. State v. Banks , 215 S.W.3d 118, 122 (Mo. banc 2007).
Second, if we find plain error, we examine the whole record to determine if such error resulted in prejudice constituting "manifest injustice" or "miscarriage of justice." State v. Muhammad , 478 S.W.3d 468, 476-77 (Mo. App. W.D. 2015). Because Rinehart's claim does not survive the first step, our recitation is limited to the record before the trial court at the time the alleged "plain error" occurred. We recite such other information as necessary for context.
On September 12, 2015, at around 1:00 a.m., Rinehart struck and killed a nineteen-year-old man ("Victim") near Neosho, Missouri. Rinehart did not report the accident at the time, and was not present when authorities arrived shortly thereafter.
The next morning, Rinehart told two people that he "hit a deer last night[,]" and showed them the damage to his vehicle-one *642 being Gaye Powell ("Powell")-a childhood friend who lived in Noel, Missouri. Rinehart told Powell he hit a deer "towards your way[,]" was not going to submit it to his insurance company, and would probably fix it himself. Powell came to believe Rinehart had hit Victim, and she reported the information to the police about a week and a half after talking to Rinehart.
On September 17, 2015, Rinehart, through his attorney, contacted the Newton County prosecutor's office for the purpose of offering his voluntary surrender, and the surrender of his vehicle, on the condition that bail not be required if he were charged. The prosecutor indicated he could not agree to the bail condition at that time, and that he would first need to speak with the Neosho Police Department and Victim's family. On September 24, 2015, Rinehart's attorney contacted the Neosho Police Department and arranged for an interview and the surrender of Rinehart's vehicle the following day.
The police took custody of Rinehart's vehicle and processed it for evidence: photographing damage to the front grill, hood, and windshield. Rinehart was charged by information with one count of the class D felony of leaving the scene of a motor vehicle accident.
A jury trial commenced on November 22, 2016. At trial, the contested issue was whether Rinehart knew he had hit a person. The State's theory of the case was that when Rinehart hit Victim, Victim's head smashed into the windshield in front of Rinehart, and Victim "rode" the hood for approximately four seconds before Victim came off the vehicle. Rinehart, the State theorized, would have seen he hit a person during this interval, but nevertheless failed to remain at the scene or alert the authorities. Rinehart's theory of the case was that he thought he hit a deer, not a person. When Rinehart hit Victim, according to Rinehart's version of events, Victim was only on the windshield for a second or so before going out of Rinehart's line of vision.
Both parties put on witnesses and evidence, including one expert witness for each party for purposes of accident reconstruction testimony. Rinehart did not testify.
Before closing argument, the jury was instructed that they must not consider as evidence "any statement or remark or argument by any of the attorneys addressed to another attorney or to the Court." The final instruction read to the jury before closing arguments was Instruction No. 9, which stated, in part: "The attorneys will now have the opportunity of arguing the case to you. Their arguments are intended to help you in understanding the evidence and applying the law, but they are not evidence."
In closing argument, the prosecutor made several references to Rinehart's possible intoxication, without timely objection by defense counsel:
• "If you're going to do that much damage to the vehicle, to have the person strike right in front of you as you're driving, and then not know that you hit a person. You know, if you are awake and sober, you're going to know that, I would submit to you."
• "Ladies and gentlemen, the evidence that [Rinehart] knew that he hit a human being is the physical evidence to his car and his common sense.... Was [Rinehart] asleep? Was he drunk? We don't know. There's only two people there at the point of the impact. Would he have a reason to lie? Would he have a reason to wait five days to turn himself in? We *643 know he was sober when he talked to the police. Was he not sober at the time? There's a reason that leaving the scene of an accident is a crime, so-and the instructions will tell you to use your common sense-that you have to use your common sense. Even if it was a roof vault, you know, you've got all of this-the hood explodes in front of you, the head hits the windshield right in front of you, the body is flipped over onto the roof and rides it for 250 feet, and then slides off back, but he doesn't stop or maybe he did stop. Again, we don't know, but he didn't call it in."
• "Even if [the Victim] was walking in the middle of the road between the fast and the slow lanes[,] ... you're still going to have your headlights illuminate something in the road ahead of you if you're paying attention or if you're sober. We can't know for sure what was going on in [Rinehart]'s mind at the time he hit [the Victim.]"
After the prosecutor finished, defense counsel asked to approach the bench and the following colloquy took place:
[RINEHART'S ATTORNEY]: How do I voice an objection to the prosecutor's reference to the possibility of lack of sobriety on the part of the defendant? There's not any evidence in the record that there was any drinking done by him and certainly it's not a reasonable-what's the word? It's not a reasonable inference. You know, he did it once. I thought, you know, okay. He did it twice and I started to get up. After the third time I think that he has misled this jury. There's no reasonable inference that could be drawn from what the evidence is that he was drinking at all. I think the jury should be advised of that fact and to disregard it.
THE COURT: Do you have a response?
[PROSECUTOR]: [O]bviously we don't know. I never suggested that I had special knowledge. I was just saying why would a person not admit it and you're out at one o'clock on a Saturday morning. That comports with common sense. It's a reasonable inference under the facts as to why [Rinehart] would not have reported striking that individual.
[RINEHART'S ATTORNEY]: I disagree.
THE COURT: You can-he didn't bring it up in his first close. He brought it up in the second. I will give you 30 seconds to state to the jury there's no evidence of alcohol.
Rinehart's counsel then addressed the jury and stated:
[RINEHART'S ATTORNEY]: I said I wasn't going to get a chance to come back up here with you. [The prosecutor] has suggested to you at least by the inference-I think his statement was if [Rinehart] was awake and sober in one reference and he made another reference to sobriety later on-wanting you to believe that there is a responsibility, if not a probability, that [Rinehart] was drinking or intoxicated when this accident occurred. I want to remind you that there's not one shred of evidence ... to make you believe that [Rinehart] had been drinking at all; no evidence whatsoever. Just because a man is out driving his vehicle at one o'clock in the morning doesn't mean he is drunk, so the judge has given me this time to tell you that.... It is not a reasonable inference to believe just because a man with long white hair and a beard driving his Ford Escort at one o'clock in the morning is intoxicated.
After thirty minutes of deliberation, the jury found Rinehart guilty of leaving the *644 scene of a motor vehicle accident, and recommended a sentence of three years in the Department of Corrections.
On December 16, 2016, Rinehart filed a motion for new trial asserting, in relevant part:
The Trial Court erred in failing to grant a mistrial, sua sponte , based on [Rinehart]'s objection to the [prosecutor]'s closing argument to the effect that [Rinehart] 'could have been impaired' on three or possibly four different occasions, which was an improper inference from the evidence adduced at trial, particularly when [Rinehart] chose not to exercise his right to testify at the trial. Not only were the statements improper inferences from the testimony, but was greatly prejudicial and most likely caused the jurors to deliberate with inflamed passions against [Rinehart].
At the sentencing hearing on January 3, 2017, Rinehart's motion for new trial was heard. After hearing argument, the trial court overruled the motion. The trial judge then stated that the court "will follow the recommendation of the jury and order [Rinehart] confined under the supervision of the Department of Corrections for 3 years." This appeal followed.
In his sole point on appeal, Rinehart argues that the trial court plainly erred in failing to sua sponte declare a mistrial in response to the prosecutor's references to Rinehart's possible intoxication in closing argument.
Standard of Review: Plain Error
Rinehart, ceding that his claim is unpreserved, requests plain error review. Rule 30.20 provides, in relevant part, that: "plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Whether to engage in plain error review is a decision within the reviewing court's discretion, and it is the appellant's burden to demonstrate plain error. State v. Sykes , 480 S.W.3d 461, 466 (Mo. App. S.D. 2016).
Plain error review contemplates two steps. First, the reviewing court inquires "whether the claimed error is ... a plain error affecting substantial rights." Hunt , 451 S.W.3d at 260 (internal quotation and citation omitted) (emphasis added). "Substantial rights are involved if, facially, there are significant grounds for believing that the error is of the type from which manifest injustice or miscarriage of justice could result if left uncorrected." Id. An error is plain where the appellant shows that the error should have been "evident, obvious, and clear to the trial court" at the time of the alleged error, based "on the record then before [the trial court]." Id. at 260, 264.
"Second, if plain error affecting substantial rights is found, the Court determines whether the error actually did result in manifest injustice or a miscarriage of justice." Id. at 260. The appellant has the burden of proving the second step in light of the whole record.[5] Muhammad , 478 S.W.3d at 476-77.
Analysis
In discerning whether the trial court committed error that was plain , we step into the shoes of the trial court at the *645 time of the alleged error,[6] with the attendant presumption that the trial court's conduct was inaugurated by proper knowledge of the law, and proper application thereof.[7] We view the facts and circumstances as then presented to the trial court-as the record up to that time so reveals. We defer to the trial court's relevant "factual underpinning" findings for matters of law under review,[8] and the trial court's fact findings (explicit and implicit) from its order rejecting Rinehart's motion for new trial.[9] Appellate courts are especially wary of claims that a trial court erred in not declaring a mistrial sua sponte in criminal cases. State v. Tilley , 104 S.W.3d 814, 819 (Mo. App. S.D. 2003).
The issue at trial was whether Rinehart knew that he had hit a person when he struck and killed Victim with his vehicle, and left the scene without alerting the authorities.
At trial, the State's theory of the case was that when Rinehart hit Victim, Victim's head smashed into the windshield in front of Rinehart, and Victim "rode" the hood for approximately four seconds before Victim came off of the vehicle. Rinehart, the State theorized, would have seen that he had hit a person during this interval, but nevertheless failed to remain at the scene or alert the authorities. Rinehart's theory of the case was that he thought he hit a deer, not a person. When Rinehart hit Victim, according to Rinehart's version of events, Victim was only on the windshield for a second or so before going out of Rinehart's line of vision.
During closing argument, the prosecutor made several references to Rinehart's possible intoxication during the accident. Defense counsel did not object. Where a trial court observes potentially improper closing argument by the prosecutor (even with potential "manifest injustice" or "miscarriage of justice" level prejudice implications), defendant's silence or request for relief other than mistrial[10] *646 gives the trial court every impression of defendant's exercise of his right to reach "the verdict of a [jury] he might believe ... favorably disposed to his fate." United States v. Jorn , 400 U.S. 470, 486, 91 S.Ct. 547, 558, 27 L.Ed.2d 543 (1971). Rinehart's contemporaneous silence gave the trial court such impression.
As our Supreme Court has explained, "appeals that lie initially with the court of appeals are lodged there with the understanding that the court of appeals is an error-correcting court. Such cases can be transferred to [the Supreme Court] because [it] is a law-declaring court." State v. Freeman , 269 S.W.3d 422, 429 (Mo. banc 2008) (Wolff, J., concurring) (emphasis added). We discern no correctable error. When Rinehart's counsel objected (though untimely), counsel did not request a mistrial, but instead requested the "jury should be advised of [the] fact [that there was no evidence of drinking] and to disregard it." The trial court granted this request for relief. Where the trial court grants defendant all the relief he requested, the trial court does not err. State v. Blurton , 484 S.W.3d 758, 775 (Mo. banc 2016).
Arguing that reversal is nevertheless compelled, Rinehart directs this Court to State v. Walter , 479 S.W.3d 118 (Mo. banc 2016). Walter is not controlling-Rinehart, unlike the defendant in Walter , received the curative relief he requested at trial. See Blurton , 484 S.W.3d at 775. Furthermore, the facts in Walter are not analogous to the facts before us.
Rinehart fails to demonstrate that the trial court plainly erred in failing to sua sponte declare a mistrial after the prosecutor's comments in closing argument. Point denied.
The judgment of the trial court is affirmed.
NANCY STEFFEN RAHMEYER, C.J./P.J.-Concurs
DANIEL E. SCOTT, J.-Concurs in Separate Opinion

"Oren Rea Rinehart" is referred to as "Ray" throughout the record on appeal.

All references to statutes are to RSMo Cum.Supp. 2014, unless otherwise indicated.

All rule references are to Missouri Court Rules (2017).

As we have indicated, this is so because even "[plain] error, which in a close case might call for a reversal, may be disregarded as not prejudicial when evidence of guilt is strong." State v. Pennington , 464 S.W.3d 292, 296 (Mo. App. W.D. 2015) (internal quotation and citation omitted).

See Hunt , 451 S.W.3d at 260, 264 ; State v. Davis , 348 S.W.3d 768, 770 (Mo. banc 2011) (An appellate court "is merely a court of review to determine whether the rulings of the trial court, as there presented , were correct[.]") (internal citation omitted) (emphasis added); Nelson v. Waxman , 9 S.W.3d 601, 608 (Mo. banc 2000) ("[E]rror ... can only be judged at the time [it occurred] and not in hindsight. Based on the information available to the trial judge [at the time of the alleged error], no error occurred.").

See State v. Amick , 462 S.W.3d 413, 415 (Mo. banc 2015) ; Rayborn v. State , 290 S.W.3d 123, 125 (Mo. App. S.D. 2009).

See State v. Taylor , 298 S.W.3d 482, 492 n.4 (Mo. banc 2009) (a trial court's "findings as to the factual underpinnings" of an evidentiary ruling must be accorded fact-finder deference, insofar as those fact findings set the factual framework for the reviewing court's de novo review of the underlying legal question); see State v. Clemons , 946 S.W.2d 206, 218 (Mo. banc 1997) ; cf. , State v. Jones , 525 S.W.3d 132, 139-40 (Mo. App. S.D. 2017).

See State v. Ess , 453 S.W.3d 196, 202-03 (Mo. banc 2015) ; Smith v. Brown & Williamson Tobacco Corp. , 410 S.W.3d 623, 639 (Mo. banc 2013) (In the absence of specific trial court findings in ruling on a motion for new trial, "the reviewing court must assume that all facts were found in accordance with the result reached."); Greene v. Alliance Auto., Inc. , 435 S.W.3d 646, 649 (Mo. App. W.D. 2014) (deference will be accorded trial court's fact findings, even when such findings are based solely on documentary evidence).

As we have said, where the defendant requests a mistrial in the alternative, and the trial court grants one of the requested alternatives other than mistrial, the trial court does not err. State v. Baker , 437 S.W.3d 834, 837 (Mo. App. S.D. 2014). "[I]f less drastic alternatives than a mistrial are available they must be employed in order to protect the defendant's interest in promptly ending the trial." State v. Wrice , 235 S.W.3d 583, 588 (Mo. App. E.D. 2007) (internal quotation and citation omitted) (emphasis added).